# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | CIVIL ACTION NO. 3:17-CV-01229 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| MID SOUTH EXTRUSION INC. | MAG. JUDGE KAREN L. HAYES |

## RULING

This is an action under Title I of the Americans with Disabilities Act, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, 42 U.S.C. § 12117(a), filed by Plaintiff United States Equal Employment Opportunity Commission (the "EEOC") against Defendant Mid South Extrusion, Inc. ("Mid South") seeking to correct Mid South's allegedly unlawful employment practices on the basis of disability and to provide appropriate relief to Intervenor Plaintiff Jeffrey Wyant ("Wyant"), who was allegedly adversely affected by such practices.

Pending before the Court is a Motion for Summary Judgment [Doc. No. 25] filed by Mid South. The EEOC filed an Opposition [Doc. No. 30], in which Wyant joins [Doc. No. 31]. Mid South filed a reply memorandum [Doc. No. 32]. For the following reasons, the Motion for Summary Judgment is DENIED.

## I. FACTS

In September 2014, Wyant was hired as a maintenance technician by Mid South, a plastics manufacturer that specializes in custom process films for individual packaging. After Wyant accepted the offer of employment, he completed a "Post Offer Medical History

Questionnaire," disclosing that he had a prior shoulder injury, which included a rotator cuff injury, leaving him with an eleven percent (11%) impairment in his range of motion and lifting overhead. Other than this shoulder injury, Wyant did not disclose any other impairments or conditions.

Wyant completed his ninety (90) day probationary period without any issue, was told he was making adequate progress, and was given a pay increase. According to Wyant's supervisor, Charles Landry ("Landry"), Wyant's performance began to fall below Landry's expectations soon thereafter, and Landry became concerned with Wyant's ability to work safely in the plant. Landry asserts he received multiple complaints from other employees regarding Wyant showing up to work with a strong smell of alcohol emitting from his body. On another occasion, Wyant allegedly tried to delegate work which required lock-out tag-out training to an employee who did not have the requisite training. As a result, Landry states that he verbally warned Wyant and explained the dangers he could have caused

In late June 2015, Wyant began having breathing problems. His primary care doctor gave him a pulmonary function test and referred him to a lung specialist. In mid-July 2015, the lung specialist determined that Wyant has significantly reduced breathing capacity and an esophagus disease which occurred due to breathing asbestos in a previous job. In addition, the lung x-ray indicated that Wyant had undiagnosed Tuberculosis (TB) which apparently occurred as a child or young man. The TB crystalized and became dormant. As a result of these findings, Wyant was referred to a cardiologist.

In early August 2015, the cardiologist determined that Wyant needed a heart catheter and recommended that he see a gastroenterologist.

In mid-August 2015, Wyant met with Lisa Shore ("Shore"), Human Resources Manager for Mid South, and told her about his TB, lung, heart, and esophagus conditions, and that he was having a heart catheterization procedure done on August 18, 2015. On August 13, 2015, Shore emailed Landry with concerns about Wyant's health affecting his continued employment. Shore stated:

> Hey, I wanted to let you know that Jeff stopped me on the way back over and he wanted to talk about a couple of things. First, he wanted to know how many points he has left, because he is having a heart Cath next week and the doctor told him he will need to be off a couple of days for that.
>
> He also stated that his doctor says he doesn't need to be working in this environment with all the health problems he has. He said the doctor told him he should get on disability. That automatically raised a red flag for me. He said his health issues stem from having TB as a child and from working around asbestos and things like that at the school board. I know we have had safety and health studies done on the plant and we are good, but this really bothers me. Just wanted to let you know what was going on since we just talked about him.

[Doc. No. 25-4, p. 143].

Wyant underwent the heart catheterization procedure on August 18, 2015, and was able to return to work on August 21, 2015, with a release from his doctor to work regular duty with no restrictions.

In mid-September 2015, Wyant's lungs became irritated by plastics dust in the plant when the machine he was working on overheated, causing him to cough repeatedly and creating some breathing difficulties. Wyant states that he used his inhaler and that, after ten (10) minutes, he was fully recovered. Wyant avers that the next morning Landry questioned him about the incident. Wyant explained that he began to cough when his lungs got irritated by the machine when it overheated, but once he used his inhaler he was okay. Landry does not recall speaking to Wyant about the coughing incident.

3

Shortly afterwards, Wyant was scheduled to receive his annual review, which would have given him a raise, ten (10) more sick days per year, and forty (40) hours paid vacation per annum. The EEOC contends that, rather than allowing Wyant to vest in these benefits, Landry preemptively terminated him – close on the heels of the coughing incident. In an email dated September 21, 2015, Landry told Shore that he was discharging Wyant because he was "not qualified to be a maintenance technician." [Doc. No. 25-4, p. 158]. Wyant avers that Landry told him he was discharged because he had no "long term commitment to the company" and because upper management wanted him gone. [Doc. No. 30-2, p. 96].

Wyant filed a charge with the EEOC. In his charge, Wyant alleges that Mid South discharged him because it perceived him as disabled. Specifically, he stated he was discharged shortly after telling Mid South he had dormant TB from childhood, as well as other breathing issues due to working with asbestos in the past, and after having a serious coughing attack at work. Further, Wyant alleges that Landry made negative disability-related comments to him, prior to his termination, including ". . . hate to say this but we are going to have to let you go . . . you are riding the clock waiting until you get your disability because of your disability and our insurance . . . having all of these sick people makes our insurance liability and premiums higher . . . didn't know you had all these health problems . . . why didn't you go to the doctor before you came to us . . . was it because of our insurance?" [Doc. No. 30-2, pp. 93-96]

The EEOC issued a Letter of Determination finding that Mid South discharged Wyant in violation of the ADA because of his medical impairment and the insurance costs associated with his treatment. When attempts to resolve the matter informally failed, the EEOC instituted the present suit.

On September 26, 2017, the EEOC filed a Complaint in this Court alleging that Wyant, a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), was discharged from employment because he has a lung impairment (50% lung capacity) that substantially limits the major life activity of breathing and/or because Wyant has a record of such impairment and/or because Mid South regarded Wyant as having an actual or perceived impairment. The EEOC filed an Amended Complaint on September 28, 2017. On March 27, 2018, with leave of court, Wyant intervened in the suit and reiterates EEOC's allegations.

On September 7, 2018, Mid South filed the instant motion for summary judgment. Mid South contends that it is entitled to summary judgment on the grounds that Wyant did not suffer from a disability during the time that he was employed with Mid South; that Wyant is not a "qualified individual" under the ADA because he cannot perform the "essential functions" of a maintenance technician; and that, regardless of any alleged disability, Mid South had legitimate, non-discriminatory reasons for terminating him.

On October 1, 2018, the EEOC filed an opposition memorandum. The EEOC asserts that Mid South misrepresented the relevant facts and applicable law in its Motion for Summary Judgment. Additionally, the EEOC contends the motion is premature because the parties are still engaged in discovery with the deposition of two of Wyant's pulmonary doctors scheduled for November. The EEOC further contends there are genuine issues of material facts in dispute. Finally, the EEOC argues the motion is meritless because much of its arguments is based on pre-ADA amendments law, whereas this is a suit governed by the ADA Amendments Act of 2008 ("ADAAA").

On October 12, 2018, Mid South filed a reply.

5

The Motion is fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at

248.)

## B. Direct Evidence of Discrimination

The ADAAA prohibits employers "from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *Burton v. Freescale Semiconductor, Inc.* F.3d 222, 226-27 (5th Cir. 2015) (internal quotation marks omitted) (quoting *EEOC v. LHC Grp., Inc*., 773 F.3d 688, 694 (5th Cir. 2014). In a termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case. *Benson v. Tyson Foods, Inc.,* 2016 WL3617803 at*6 (E.D. Tex. July 6, 2016) (citing *EEOC v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014)); *see also EEOC v. Chevon Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cr. 2009)).

Direct evidence "is evidence that if believed, proves the facts of discriminatory animus without inference or presumption." *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 310 n.6 (5th Cir. 2004).

In the present case, Mid South contends there is no evidence to support Wyant's claim that he was fired because of his alleged disability, and, furthermore, there is no evidence that Mid South was even aware of his alleged disability.

The EEOC, on the other hand, contends there is direct evidence of disability discrimination. Shore stated in her email to Wyant's supervisor Landry that she was concerned about Wyant's "disability." At the time of his termination, according to Wyant, Landry said he had to terminate Wyant's employment because management was concerned that Wyant would be seeking long term **disability** benefits — an expense Mid South did not want to incur. The EEOC asserts this direct evidence shows, without need of inference, that Wyant was discharged on the basis of a disability.

7

The Court finds the EEOC has raised a genuine issue of material fact which precludes summary judgment. Although the email from Shore to Landry may not constitute direct evidence, the statements that Landry allegedly made to Wyant when firing him, if true, are direct evidence of discrimination. When a supervisor, in the context of firing an employee, or immediately prior to that event, says that " we are going to have to let you go" because "of your disability and our insurance", as well as other statements, the jury can infer an intent to discriminate by Mid South. Therefore, on this basis alone, Mid South's Motion for Summary Judgment should be denied.

### C. Indirect Evidence of Discrimination

Absent direct evidence of discrimination, a plaintiff must make a prima facie case of discrimination by showing he (1) has a disability, or was regarded as disabled, or has a record of a disability; (2) was qualified for the job; and (3) he was subjected to an adverse employment decision on account of his disability. *Cannon v. Jacobs Field Services North America, Inc.,* 813 F. 3d 586, 590 (5th Cir. 2016) (citing *EEOC v LHC Grp., Inc*. 773 F.3d 688, 697 (2014). "If he makes that showing, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Id*. at 590 (quoting *EEOC v. Chevron Phillips Chem. Co*., LP. 570 F.3d 606, 615 (5th Cir. 2009)). "The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* (citing *Chevron Phillips Chem. Co., 570 F3d.* at 615.)

Mid South argues that the EEOC cannot make out a prima facie case, and, even if the EEOC can, Wyant was fired for legitimate, non-discriminatory reasons. The EEOC responds that it has shown that Wyant is qualified for the job, but was fired because of his actual disability, because he was regarded as disabled, and/or because he had a record of disability.

It is undisputed that Wyant suffered an adverse employment action and that he was at least minimally qualified for the job.[1] Therefore, the Court addresses whether he was actually disabled, regarded as disabled, and/or had a record of disability.

   1. **Actual Disability**

An actual disability is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. §12102(1); *see also* 29 C.F.R. §1630.2(g)(1)(i); *Cannon,* 813 F.3d at 590. A physical or mental impairment includes a physiological disorder or condition that affects one or more body systems. 29 C.F.R. § 1630.2(h). To qualify as having an ADAAA disability, the plaintiff must prove the impairment substantially limits a major life activity. 29 C.F.R. §1630.2(j) (1)(ii); *see also Willis v. Noble Environmental Power LLC*., 143 F.Supp.3d 475, 479 (N.D. Tex. October 22, 2015)

"An impairment is a disability within the meaning of this section if is substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Willis,* 143 F.Supp.3d at 481 (quoting 29 C.F.R. §1630.2(j)(1)(ii)).

"The ADAAA maintains that 'major life activities include, but are not limited to . . . breathing.' 42 U.S.C. § 12102(2)(A). Additionally, 'a major life activity also includes the operation of a major bodily function, including but not limited to . . . respiratory [and] circulatory . . . functions.' *Id*. §12102(2)(B)*". Gonzalez v. Texas Health and Human Services Com.'n,* 2014 WL 6606629 at *6 (W.D. Tex. Nov. 19, 2014). Courts have relied on a plaintiff's "own statements

---

[1] Mid South raises issues with Wyant's job performance, but those are addressed to the legitimate, non-discriminatory reasons for his termination.

9

that his or her condition is substantially limiting." *Gonzalez,* 2014 WL 6606629 at 8. Further, the ADAAA is to be "liberally construed." *Id*. "When evaluating whether someone is 'substantially limited' the focus should not be on the 'outcomes' the person can achieve, as 'an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Id*. at p. 7 (quoting *Molina v. DSI Renal, Inc*. 840 F.Supp.2d 984, 995 (W.D. Tex. January 4, 2012)).

Mid South moves for summary judgment on the basis the EEOC has failed to present evidence that Wyant actually had this condition or diagnosis, other than Wyant's conclusory allegation. Mid South contends the EEOC never investigated this allegation and never obtained any medical documents which would prove it. Mid South further contends that Wyant never informed Shore or anyone else with Mid South of his alleged disability, that the only medical information that he provided Mid South consisted of medical releases from three different health care providers indicating that he was released to return to work full duty with no restrictions, and that Wyant indicated in his EEOC intake questionnaire that his alleged breathing impairment did not limit him from working. Finally, Mid South asserts that in their conversation in August 2015, Shore was under the impression that Wyant was referring to his health problems associated with his heart catheterization, and not a problem with his breathing.

However, at this stage, the Court may rely on Wyant's own statement that his lungs are functioning at a significantly low capacity of 50%, as compared to a non-disabled person. This is a permanent condition that affects his ability to breathe as compared to most people in the general population, breathing is a major life activity, and Wyant will be restricted in breathing for the rest of his life.

The Court finds there are genuine issues of material fact which preclude summary judgment in Mid South's favor on the "actual disability" prong. Wyant's testimony is in some respects corroborated by the email from Shore to Landry which clearly reflect a concern with "all the health problems he has." Furthermore, the parties are still engaged in discovery with the deposition of two of Wyant's pulmonary doctors scheduled for November. In any event, the evidence submitted by the EEOC is at least sufficient to show there is a genuine issue of material fact as to whether Wyant suffers from an actual disability.

2. **Regarded as Disabled**

The Fifth Circuit "ha[s] not yet determined what it means to be 'regarded as' impaired under the ADAAA, but section 12102(3)(A) is clear… [an employee] need only show that her 'employer perceived [her] as having an impairment' and that it discriminated against her on that basis." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (quoting *Mendoza v. City of Palacios,* 962 F.Supp.2d 868, 871 (S.D. Tex. June 19, 2013)).

"The ADA now covers not just someone who is disabled but also those subjected to discrimination because they are 'regarded as having…an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity.'" *Cannon*, 813 F.3d at 591 (5th Cir. 2016) (citing 42 U.S.C. §§12102(1)(C), 3(1)(A). "The amended 'regarded as' provision reflects the view that 'unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are just as disabling as actual impairments.'" *Id.* (citing 29 C.F.R. Pt. 1620, App. §1630.2(1). "It overrules prior authority requiring a plaintiff to show that the employer regarded him as being substantially limited in a major life activity." (internal quotations omitted) *Id*. at 590-91 (5th Cir. 2016) (quoting *Burton,* 798 F.3d at 231(holding that employer regarded the plaintiff as disabled when the supporting documentation for plaintiff's termination

specifically tied complaints about [plaintiff's] conduct to her asserted medical needs). (internal quotations omitted.) "[A] plaintiff is also not required to show 'how or to what degree [his employer] believed the impairment affected him.'" *Mendoza*, 962 F.Supp. 2d at 872 (citing *Hilton v. Wright*, 673 F.3d 120, 129 (2nd Cir. 2012)).

Mid South moves for summary judgment on the basis that it could not have regarded or perceived Wyant as substantially limited in a major life activity because, once again, the only records Wyant provided to Mid South showed that he could return to work full duty with no restrictions. Mid South further contends that Wyant has no evidence to support his claim that Mid South terminated him because he allegedly told Shore that he has a lung impairment that substantially limits the major life activity of breathing. It argues, instead, that Shore was under the impression that Wyant's heart catheterization procedure was due to his claims to her of a childhood TB diagnosis and his past exposure to asbestos. It contends Wyant never made a request or complaint to anyone regarding his inability to breathe, and never informed anyone at Mid South that he had a breathing impairment prior to his termination. Mid South asserts that the first word it received of any breathing difficulty is the EEOC's findings rendered on June 16, 2017, almost two years after he was terminated. Mid South concludes that because there is no evidence to support Wyant's allegations that he informed Mid South of his breathing impairment, he cannot establish that he was discriminated against because Mid South "regarded" him as disabled.

The EEOC responds that the evidence shows that Mid South regarded Wyant as disabled and that Mid South acted on fears, prejudices and biases in its treatment towards Wyant. The EEOC contends that Landry's alleged remarks to Wyant when firing him, along with Shore's email evidencing concerns with Wyant's disability shows that the reason for discharge was Wyant's medical condition.

12

The Court finds there are genuine issues of material fact which preclude summary judgment in Mid South's favor on the "regarded as" prong. The temporal proximity of Mid South's actions, in terminating Wyant within a day after having a coughing spell at work, which Wyants alleges was witnessed by a supervisor, and within weeks of his informing them he had dormant TB and other health issues due to exposure to asbestos, supports the view that Mid South regarded Wyant as disabled within the meaning of the statue.

3. **Record of Disability**

Mid South moves for summary judgment on the basis that there is no evidence of a record of Wyant's alleged disability. Mid South asserts that, although Wyant alleges that he informed Lisa Shore that he has a 50% breathing capacity in his lungs and an esophagus disease during their meeting on August 13, 2015, there is no evidence of Mr. Wyant having a "record of" impairment, and, instead, there are merely allegations that are not documented in either party's Rule 26 disclosures. Mid South states the only records that Wyant provided it indicated that he was released to return to work with no restrictions, and in fact, Wyant provided Mid South with a release to work with no restrictions on August 21, 2015, which was after his meeting with Lisa Shore. Because there is no evidence of a "record of" impairment, Mid South submits Wyant will not be able to satisfy his burden under a "record of disability" claim.

The EEOC responds that Wyant's records show he was treated by several medical doctors while working with Mid South who noted the extent of his medical health and his permanent limitations. Also, Wyant informed Shore of the medical results, particularly relative to the TB and asbestos exposure, which permanently reduced his lung capacity. Wyant's medical test and diagnoses records caused Shore to question his continued employment because of his disability. Shore then informed Landry of Wyant's disability. Landry discussed the matter with upper

13

management and Landry then terminated Wyant — allegedly for poor performance — but told Wyant it was because management was concerned with his disability and its associated medical costs. The EEOC asserts, therefore, Wyant has a record of a disability of which the Defendant was well aware.

The Court finds there are genuine issues of material fact that preclude summary judgment in Mid South's favor on the "record of disability" prong. Wyant was treated by several doctors, including a cardiologist. Shore discussed Wyant's medical condition and disability in her August 13, 2015, email to Landry, which indicates Mid South was aware of Wyant's existing health problems and medical treatment.

    **D.    Legitimate, Nondiscriminatory Reasons for Termination**

As indicated above, once a plaintiff makes out a prima facie case of discrimination, a presumption of discrimination arises, and the employer must "articulate a legitimate non-discriminatory reason for the adverse employment action." *Cannon,* 813 F.3d at 590 (citing *EEOC v. Chevron Phillips Chem. Co., LP.* 570 F.3d 606, 615 (5th Cir. 2009)). "The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.*

Mid South asserts that Wyant's work performance was unsatisfactory. Poor performance constitutes a legitimate, non-discriminatory reason for taking an adverse action against an employee, when coupled with specific examples. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015).

Mid South alleges that Landry had several problems with Wyant throughout Wyant's one year with the company. These included: Wyant's use of improper wiring for piping supports; Wyant struggled with electronics and troubleshooting; Wyant had a safety incident involving a

younger employee and a safety electrical box; Wyant used screwdrivers to bypass electrical circuits; Wyant's hands shook; there were concerns of Wyant smelling of alcohol; Wyant installed an AC unit which took him a lot longer than Landry thought it should have; Landry asked Wyant to prepare HVAC protocols and Wyant failed to prepare those; Wyant was hired at a rate of pay and an expectation that Wyant had the necessary skillsets for the job and Landry expected him to acclimate pretty quickly, but Wyant did not. [Doc. No. 32, pp 5-6].

The Court finds that Mid South has articulated a legitimate, non-discriminatory reason for Wyant's termination. However, the EEOC has produced evidence that Mid South's proffered reason for discharging Wyant is a pretext for discrimination.

**E.  Pretext**

If a defendant successfully meets its burden of providing a legitimate non-discriminatory reason for discharge, the plaintiff must — in a circumstantial evidence case — then offer summary judgment evidence supporting the conclusion that the defendant's proffered reasons were a pretext for discrimination. *St. Mary's Honor Center v Hicks*, 509 U.S. 502, 507-08 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). The "trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom…on the issue of whether the defendant's explanation is pretextual.'" *Reeves v. Sanderson Plumbing Products, Inc.* 530 US. 133, 143 (2000) A plaintiff's prima facie case of discrimination combined, with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Id* at 148.

The EEOC submits that there is ample evidence on which a jury could conclude that Mid South's stated reasons were pretextual. The EEOC asserts that Wyant told Shore about his

TB/Asbestos issues, she immediately sent an email to Landry voicing her fears, Wyant had a severe coughing attack at work, Landry met with Wyant about the attack and within days Wyant was discharged.

The EEOC further contends there is no pre-discharge evidence to support the stated reasons for discharge. Further, the alleged direct evidence remarks, such as Shore's email and Landry's termination-meeting comments, establish that Wyant was fired because of his medical condition and the perception that it might lead to insurance costs or disability claims.

The Court concludes there are genuine issues of material fact which preclude summary judgment as to whether Mid South had legitimate, non-discriminatory, non-pretextual reasons to terminate Wyant. As indicated above, there is conflicting evidence as to those reasons. The trier of fact will ultimately determine the credibility of the witnesses.

Additionally, with regard to summary judgment, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. 242, 255 (1986).

**F.    Direct Threat Defense**

"[A]n individual is not qualified for a job if there is a genuine substantial risk that he or she could be injured or could injure others, and the employer cannot modify the job to eliminate the risk." *Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir. 1991). The ADA allows qualification standards that "include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace" and defines a "direct threat" as a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996)

Further, whether one is a direct threat is a complicated, fact intensive determination. *Rizzo v. Children's World Learning Ctr.,* 84 F.3d 758, 764 (5th Cir. 1996). This determination cannot be based on unfounded fears or stereotypes; it must be veritable. *Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir. 1991).

Mid South moves for summary judgment on the basis that it dismissed Wyant because it was concerned about his own health and safety as well as for the safety of the other employees, due to Wyant's hands shaking and his being nervous around their equipment. The EEOC responds that Mid South's assertion is based on fear, stereotypes and pure conjecture, and, further, that Mid South failed to make any effort to accommodate Wyant.

The Court finds there are genuine issues of material fact which preclude summary judgment. There is nothing to indicate that Mid South made an independent assessment and obtained information to make a "fact intensive determination" as to whether Wyant posed a direct threat to the health or safety of himself or of others in the workplace. It is just as likely that Mid South simply discharged Wyant because it was concerned about his TB and asbestos issues raising their health costs. Determining who to believe is a question for the jury.

## III. CONCLUSION

For the reasons set forth, Mid South's Motion for Summary Judgment [Doc. No. 25] is **DENIED**.

MONROE, LOUISIANA, this 18th day of October, 2018.

                                               **TERRY A. DOUGHTY**
                                               **UNITED STATES DISTRICT JUDGE**